552 S.E.2d 390

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Michael E. BROWN, Defendant Below, Appellant.**

No. 28404.

Supreme Court of Appeals of West Virginia.

Submitted March 6, 2001.

Decided May 1, 2001.

Dissenting Opinion of Justice Starcher July 24, 2001.

Dissenting Opinion of Chief Justice McGraw July 25, 2001.

Darrell V. McGraw, Jr., Esq., Attorney General, Allen H. Loughry, II, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

Joseph P. Albright, Jr., Esq., Bradley & Albright, Parkersburg, West Virginia, Attorney for the Appellant.

PER CURIAM:

This appeal was brought by Michael E. Brown, defendant below, from the Circuit Court of Cabell County. The defendant appeals his conviction of two counts of first degree murder with mercy, and his sentence of two consecutive life terms in the penitentiary. After considering the defendant's numerous assignments of error, we affirm the defendant's conviction but reverse his sentence and remand for a presentence report and a new sentencing hearing.

## I.

## FACTS

The defendant was convicted of the murders of Ronald Davis and Greg Black who were found dead of gunshot wounds in Greg Black's house in Cabell County on August 17, 1997. Davis had been shot once in the face and was lying in the doorway to the house. Black was lying beside his bed. He had been shot seven times and died of wounds to his chest and back.

At the defendant's trial, which occurred on six days in February and March, 1999, the State presented evidence that the defendant sold a bag of marijuana to Ronald Davis and Greg Black, and "pinched off the top" or "shorted" the marijuana so that Davis and Black did not receive what they paid for. After a subsequent discussion between the defendant and Davis concerning this matter, the defendant blamed the loss of his car keys on Davis and Black, became angry, and vowed to get even.[1] The defendant later

---

1. The defendant found the car keys a few days after this incident.

convinced Matthew Fortner to accompany him to Greg Black's house for the purpose of robbing Davis and Black of anti-anxiety pills. In the early morning hours of August 15, 1997, the defendant and Fortner went to the victims' house, and the defendant shot both victims.

The State's evidence adduced at trial consisted essentially of the testimony of Shawn Sullivan, Bobby Pullen, Daniel Gosnay, Jason Pinkerton, Michael Mount, and Matthew Fortner, all of whom regularly drank alcoholic beverages and took drugs with the defendant.[2] Bobby Pullen testified that the defendant told him that he was going to "get" Davis and Black for taking his keys. Michael Mount testified that, immediately after the murders, the defendant admitted to him that "me and Matt [Fortner] went out there and shot those two guys that took my keys." Matthew Fortner testified that he accompanied the defendant to rob Davis and Black and witnessed the defendant shoot them. There was no physical evidence linking the defendant to the crimes, including no identifiable fingerprints or DNA evidence, and no gun residue was found in the defendant's vehicle.[3]

The defendant's evidence consisted of the testimony of an expert in gunshot residue who testified essentially that residue would have been found in the defendant's vehicle if he had fired a gun at the time of the murders; the defendant's father and sister who testified of the defendant's normal behavior immediately after the murders; the defendant's mother who testified that the defendant arrived home at 2:52 a.m. on the morning of August 15, 1997 which conflicts with the State's witnesses' testimony concerning when the murders occurred; and the defendant, who denied any involvement in the murders. The defendant also vigorously at-tacked the credibility of the State's witnesses.

The jury found the defendant guilty of two counts of first degree murder. A bifurcated hearing was held several days later at which the jury granted mercy to the defendant. At the close of this hearing, the trial court sentenced the defendant to consecutive life terms.

## II.

### DISCUSSION

■ At the outset, the defendant argues that the trial court committed reversible error by allowing a thirteenth juror to attend the jury deliberations. He urges this Court to reconsider its recent holding in *State v. Lightner*, 205 W.Va. 657, 520 S.E.2d 654 (1999), and find that the presence of a thirteenth juror during jury deliberations constitutes reversible error. This we decline to do.

■ In Syllabus Point 2 of *State v. Lightner*, we held:

When a defendant fails to object to an alternate juror retiring to the jury room with the regular jurors, we will consider the circumstances under the plain error rule of West Virginia Rule of Criminal Procedure 52(b). We expressly overrule and no longer adhere to the rigid standard of *State v. Hudkins*, 35 W.Va. 247, 13 S.E. 367 (1891), which states that when thirteen jurors are impaneled and render a verdict, the judgment of the circuit court must be reversed and set aside.

Because the defendant did not object at trial to the presence of the thirteenth juror at the jury deliberations, we will consider the circumstances under the plain error rule.

■ "In criminal cases, plain error is error which is so conspicuous that the trial judge and prosecutor were derelict in counte-

---

2. After the victims' bodies were discovered, two members of this group, Matthew Fortner and Joey France, were discovered in Florida where they had been arrested for robbing an elderly couple. They were in possession of a Glock nine millimeter handgun, subsequently determined to be the murder weapon. It was later discovered that Matthew Fortner and Joey France left West Virginia to travel to Florida on the same day arson was committed on the house in which the victims were found.

3. The State's evidence indicated that the defendant and Matthew Fortner drove to and from the crime scene in the defendant's vehicle. Gunshot residue tests were conducted on the interior of the vehicle approximately two to three weeks after the murders.

nancing it, even absent the defendant's timely assistance in detecting the error." *State v. Marple*, 197 W.Va. 47, 52, 475 S.E.2d 47, 52 (1996) (citation omitted). "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

Under the first *Miller* factor, we must determine if there was error. Allowing an alternate juror to attend jury deliberations of the regular twelve member jury panel is obviously an error. Rule 24(c) of the West Virginia Rules of Criminal Procedure states that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." Under the second factor of the *Miller* test, we also find that the error is plain or, in other words, clear or obvious. It is uncontested that the alternate juror, rather than being discharged at the appropriate time, proceeded to the jury room with the regular twelve jurors.

■ The third factor requires us to determine whether the alternate juror's presence during jury deliberations affected the substantial rights of the defendant. "[T]his requirement means that the error must result in prejudice to the defendant. The defendant bears the burden of persuasion on this issue." *State v. Lightner*, 205 W.Va. at 662, 520 S.E.2d at 659 (citation omitted). In other words, we must ask whether the error affected the outcome of the proceedings in the trial court. *See State v. Miller*, 194 W.Va. at 18, 459 S.E.2d at 129. "Unless there is a reasonable possibility that the alternate's participation caused the jury to convict rather than acquit, the convictions will stand." *State v. Lightner*, *id.* In the instant case, we do not believe there is a reasonable possibility that the thirteenth juror's mere presence during jury deliberations caused the jury to convict rather than acquit.

In *Lightner*, *supra*, this Court found that the defendant was not prejudiced where thirteen people actually deliberated and voted on the verdict which found the defendant guilty. We reasoned that "the alternate is chosen in the same way as a regular juror, is subjected to the same test of impartiality and is required to possess all the qualifications of a regular juror." *State v. Lightner*, 205 W.Va. at 663, 520 S.E.2d at 660 (citation omitted). The instant case is distinguished from *Lightner* in that the thirteenth juror, although present in the jury room, did not participate in the jury deliberations. The trial transcript reveals that the trial court instructed the thirteenth juror not to participate in the deliberations in any way. In addition, the record includes the affidavits of three jurors which certify that, pursuant to the trial court's instructions, the jury alternate did not participate in, or influence, the jury's deliberations. These assertions are not challenged by the defendant on appeal. Finally, having found no reversible error in *Lightner* where the thirteenth juror actually deliberated and voted on the verdict, we are even less disposed to find reversible error in the instant case where the thirteenth juror was merely present in the jury room but did not take part in the deliberations. Accordingly, we conclude that there is no likelihood that the thirteenth juror's presence during jury deliberations prejudiced the defendant or affected the outcome of the proceedings.

■ Second, the defendant contends that the trial court erred in discharging a tardy juror prior to jury deliberations. The record reveals that the juror telephoned the trial court to say that he would be late because of a flat tire. As a result, the trial court discharged the juror and replaced him with an alternate juror without objection. On appeal, the defendant claims that the juror was only minutes late, and that such a brief and temporary absence does not constitute an inability to perform the duty of juror under W.Va. Code § 62-3-7 [4] and West Virginia Rule of Criminal Procedure 24(c).[5] The defendant

---

4. W.Va.Code § 62-3-7 (1923) provides, in part, that "[i]f a juror, after he is sworn, be unable, from any cause, to perform his duty, the court may, in its discretion, cause another qualified juror to be sworn in his place."

5. Rule of Criminal Procedure 24(c) provides, in part, "[a]lternate jurors in the order in which

argues that he had a right to have his case decided by the original twelve persons selected as jurors, and that this right limits the trial court's discretion.

■ It is a long-held rule of this Court that,

It is within the sound discretion of the court in the trial of a felony case, if a juror, at any time after he is sworn, and before verdict, becomes, from any cause, unable to discharge his duties as such juror, to discharge such juror, and substitute another qualified juror in his place[.]

Syllabus Point 1, in part, *State v. Davis*, 31 W.Va. 390, 7 S.E. 24 (1888) (footnote omitted). Also, because this alleged error was not objected to at trial, the defendant must show plain error or prejudice. We simply do not believe that the dismissal of the tardy juror and his replacement with an alternate juror constituted an error under the circumstances of this case.

Despite the defendant's claim to the contrary, we are unable to find in the record when or even if the dismissed juror arrived at the trial court. The transcript simply indicates that the dismissed juror was not present at the time the trial court instructed the jury. Common sense dictates that when a juror is not present, he or she is, at that time, unable to perform the duty of a juror. In addition, we do not believe that the trial court acted unreasonably in choosing to dismiss the tardy juror rather than wait on his arrival given the fact that the giving of jury instructions, closing arguments, and jury deliberations were expected to be lengthy, and alternate jurors were available.

■ Further, even if this Court were to find that the trial court abused its discretion or erred in dismissing the tardy juror and replacing him with an alternate juror, the defendant has failed to show prejudice. There is no evidence that participation by the discharged juror would have changed the jury verdict, or that the juror who took his place was prejudiced against the defendant. Accordingly, we find no merit to the defendant's arguments on this issue.

■ Third, the defendant avers that the trial court erred in conducting discussions with counsel regarding jury instructions while the defendant was not present. The record shows that in the defendant's absence, a discussion was held between counsel and the trial court in which defendant's counsel agreed to the court's general charge and the State's proposed instructions one, two, and four; the trial court overruled the defense objection to State's proposed instruction three; and State's instruction five was considered.[6] The prosecutor, at that point, reminded the trial court that the defendant was not present, and the discussion was suspended until the defendant arrived. The trial court then summarized what had occurred in the defendant's absence.[7] The defendant now argues that his absence at a critical stage in the proceedings mandates a reversal

---

they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties."

**6.** State's instruction number one explained that the jury could find the defendant either guilty of first degree murder or not guilty. It further set forth the elements of first degree murder and also the felony-murder doctrine. State's instruction number two stated that,

it may be inferred that a person intends that which is the natural and probable consequences of his own act; and that if one voluntarily and willfully does an act, the direct and natural tendency of which is to injure another it may be inferred that the injury of the other person was intended.

State's instruction number three explained that an aider and abettor, and a principal in the second degree, may be criminally liable for the criminal act as if he were the absolute perpetrator of the crime. State's instruction number four described in more detail the felony-murder rule. Finally, the State withdrew its instruction number five, concerning lesser included offenses, after the defendant decided on an "all or nothing" strategy, i.e., the only two choices provided to the jury would be a finding of guilty of first-degree murder or not guilty.

**7.** Upon the defendant's arrival, the trial court stated:

All right. So, let's run though [sic] these again. You have no objection to [State's] 1, no objection to the State's charge—or to the Court's charge, no objection to State's 2. You object to State's 3, but I'm going to give it over your objection. And no objection to State's 4. You objected to State's 5 because it offered lesser included offenses?

of his conviction under *State v. Hamilton,* 184 W.Va. 722, 403 S.E.2d 739 (1991), where this Court reversed the defendant's conviction because he was not present during jury selection even though a record was made of those proceedings. The defendant asserts that the discussion of the jury instructions was important, and that he may have had meaningful input.

We have held that,

The defendant has a right under Article III, Section 14 of the West Virginia Constitution to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless.

Syllabus Point 6, *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977). This right to be present "arises from and is implicit in the fundamental right to confront one's accusers[.]" *State v. Eden,* 163 W.Va. 370, 375, 256 S.E.2d 868, 871 (1979). In addition, W.Va.Code § 62-3-2 (1923) provides, in part, that "[a] person indicted for felony shall be personally present during the trial therefor." Finally, Rule 43(a) of the West Virginia Rules of Criminal Procedure mandates that "[t]he defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."

This Court recently clarified that "[t]he right to be present is not a right to be present at every moment, but a right to be present at all 'critical stages' in a criminal proceeding." *State v. Shabazz,* 206 W.Va. 555, 557, 526 S.E.2d 521, 523 (1999), *cert. denied, Shabazz v. West Virginia,* 529 U.S. 1113, 120 S.Ct. 1971, 146 L.Ed.2d 801 (2000). "A critical stage of a criminal proceeding is where the defendant's right to a fair trial will be affected." Syllabus Point 2, *State v. Tiller,* 168 W.Va. 522, 285 S.E.2d 371 (1981). Further, the right to be present at trial may be waived. We stated in Syllabus Point 7, in part, of *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975):

Insofar as the decision[ ] in *State ex rel. Boner v. Boles,* [148 W.Va. 802, 137 S.E.2d 418 (1964) ] ... held that the common law/statutory right of presence is inalienable and cannot be waived, such decisions are disapproved; an accused, by declaration and conduct, may waive a fundamental right protected by the Constitution if it is demonstrated that such waiver was made knowingly and intelligently.

As noted above, we also have recognized that the requirement that the defendant be present at all critical stages of the trial is subject to the harmless error test. *See State v. Boyd,* 160 W.Va. at 247, 233 S.E.2d at 719. "Consequently, there are two defenses available when it is claimed that the accused's absence creates reversible error. The first is that the absence occurred at a non-critical stage of the criminal proceeding. The second is that even if at a critical stage, it was harmless error." *State v. Boyd, id.* Of course, the State also may show that the defendant knowingly and intelligently waived his right to be present. *Boyd* also provides that the State has the burden of proving its defenses beyond a reasonable doubt.

In order to rebut the defendant's claim of reversible error in the instant case, the State responds that the defendant's absence during several minutes of the instruction conference was harmless error, and that the defendant signed a "Notice of Requirement to be Present at Hearings" in which he expressly waived his right to be present at any stage of the trial. To support its harmless error claim, the State argues that nothing occurred during the portion of the instructions conference during which the defendant was absent that could have affected the outcome of the trial. Further, the State asserts that any harm caused by the defendant's absence was cured by the fact that, upon the defendant's arrival, the trial court summarized for the defendant what occurred in his absence.

We agree with the State that the defendant's absence at the beginning of the discussion concerning jury instructions amounted to harmless error.[8] The record indicates

---

8. In *State v. Vance,* 146 W.Va. 925, 124 S.E.2d 252 (1962), the defendant's conviction of statuto-

that the trial court succinctly summarized for the defendant what occurred in his absence. This gave the defendant an opportunity to address the proposed jury instructions which were discussed prior to his arrival. In fact, the transcript shows that the defendant expressly concurred with the withdrawal of State's instruction five because of his desire not to pursue a verdict of lesser included offenses. Of the remaining instructions discussed in the defendant's absence, only instruction three was objected to by defense counsel, and this instruction has not been assigned as error on appeal. Further, according to Rule of Criminal Procedure 43(c)(3), a defendant need not be present at a conference or argument upon a technical question of law. The transcript indicates that the discussion of the instructions during the defendant's absence concerned questions of law and not questions of fact that would be within the knowledge of the defendant. Finally, the circumstances of this case are distinguishable from those in *State v. Hamilton, supra,* relied upon by the defendant. In *Hamilton,* the defendant was not present during any of the jury selection, whereas in the instant case, the defendant was absent from the instructions conference only briefly, and the proceedings which occurred in his absence were summarized when he arrived. Therefore, we find that the State has met its burden of proving beyond a reasonable doubt that the defendant's absence from the instructions conference did not prejudice the defendant or affect the outcome of the trial, and thus did not constitute reversible error.[9]

█ Fourth, the defendant asserts that the trial court abused its discretion in denying his motion to continue the trial. According to the defendant, more time was needed for his gunshot residue expert to replicate the tests performed by the State on the defendant's vehicle. The State's gunshot tests on the defendant's vehicle, conducted approximately two to three weeks after the murders, were negative for the presence of any gunshot residue in the vehicle's interior. The State's explanation for this at trial was that gunshot residue can be easily transferred from one surface to another, washed off, blown away, or diminished to the point of non-detection. The defendant sought to counter the State's explanation with the testimony of his own expert witness to show that if the defendant had fired the gun which killed the victims and then driven from the crime scene in his own vehicle, as alleged by the State, gunshot residue would have been present in the interior of the defendant's vehicle. The defendant now avers that the trial court's failure to allow additional time for his expert to complete his testing constituted prejudicial error.

---

ry rape and his sentence of life in the penitentiary was reversed where the defendant were voluntarily absent for four or five minutes during discussion of jury instructions. The Court's reasoning was that W.Va.Code § 62–3–2 was mandatory notwithstanding that the defendant's absence did not prejudice him. *Vance* was later disapproved by *State v. Slie,* 158 W.Va. 672, 213 S.E.2d 109 (1975) and *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975) in which the Court found that unless the defendant's absence results in prejudice, it is harmless error.

9. Concerning the State's claim of waiver, included in the record is a "Notice Of Requirement To Be Present At Hearings" which states the following:

As the defendant in this indictment, I know I am required to be present at all stages of trial. I am aware that Rule 43 of the West Virginia Rules of Criminal Procedure requires me to appear at every stage of my trial. I acknowledge that if I choose not to appear at any stage of the trial the State may continue in my absence to prosecute me, including the impaneling of the jury, the trial itself, the return of the verdict, and the imposition of sentence.

By signing two copies of this NOTICE, I agree that I fully understand this requirement. I will be considered to have waived my right to be present should I voluntarily absent myself at any stage hereafter. My waiver shall last for as long as my voluntary absence shall persist.

This notice is signed by the defendant and dated January 27, 1998. The record also reveals that the defendant was represented by counsel when he executed this notice. However, while this waiver appears valid on its face, by its own terms it only applies to a stage of the trial from which the defendant voluntarily absents himself. The State has failed to show that the defendant was voluntarily absent from the instructions conference. The record reveals only that when the prosecutor reminded the trial court that the defendant should be present, defendant's counsel indicated that the defendant was in the library and needed to be brought to the conference. Whether or not the defendant voluntarily absented himself from the conference is not apparent.

The trial transcript reveals that in a February 5, 1999 pre-trial hearing, the defendant moved for a continuance of the February 22, 1999 trial date. One of the stated reasons for the motion was that the defendant had received the murder weapon only a week prior to the hearing. After listening to the arguments of counsel, the trial court denied the motion to continue "at this time." However, another pre-trial hearing occurred on February 19, 1999 at which time the defendant clearly moved to withdraw his motion to continue the trial.

Evidence presented by the defendant at trial indicates that the defendant's gunshot residue expert received the murder weapon on January 28, 1999, and performed his first test on February 11, 1999. Essentially, the expert fired the murder weapon eight times, then drove his vehicle for ten minutes. Three samples were then collected from the vehicle's interior and tested for gunshot residue. Numerous particles of gunshot residue were identified on each of the three samples. The expert reported these results to the defendant on February 16, at which time it was decided that additional testing would be done. On February 18, additional testing was conducted and gunshot residue was again identified on each of three samples. The results of both tests were presented at trial.

 "A motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion." Syllabus Point 2, *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979). Further, "[w]hether there has been an abuse of discretion in denying a continuance must be decided on a case-by-case basis in light of the factual circumstances presented, particularly the reasons for the continuance that were presented to the trial court at the time the request was denied." Syllabus Point 3, *State v. Bush, id.* In the instant case, however, the defendant not only did not object to the denial of his motion to continue but withdrew the motion at the February 19 conference. Therefore, in order to prevail on this issue, the defendant must show that he was prejudiced by

the denial of his February 5 motion to continue. This the defendant is unable to do.

In his written motion to continue submitted to the trial court on approximately February 3, 1999, the defendant listed eight grounds for the motion, three of which are specific and worth consideration by this Court. The first is that the defendant's expert's lab reports were not complete due to late production of the murder weapon by the State. As noted above, the defense expert's tests were completed and submitted to the defendant by the time of trial, and this evidence was presented at trial. Second, the defendant claimed that the interviewing of three witnesses, Terry Michael Mount, Erica Oblinger, and Daniel Gosnay were not complete. The transcript shows that Terry Michael Mount and Daniel Gosnay testified at the trial and were thoroughly questioned by the defendant. Erica Oblinger was not called as a witness by either the State or the defendant. Finally, the defendant claimed that he needed more time to review the State's "audio" of the crime scene. The hearing on defendant's motion to continue was held on February 5, which was 17 days prior to the trial date. The Court is confident that the defendant had the opportunity to review this evidence during that period. Finally, the fact that the defendant withdrew his motion to continue three days prior to trial indicates to us that he was confident at that time of his preparation for trial. Under these circumstances, we are unable to conclude that the trial court abused its discretion, much less that the defendant was prejudiced by plain error.

 The fifth assignment of error raised by the defendant is that the trial court erred by "going off the record" at least nine times during the trial. The defendant lists nine instances in which it is noted in the trial transcript that discussions were held between the trial court and counsel which were not recorded by the court reporter. The defendant argues that several of the matters discussed off the record involved serious issues or unknown discussions and that the cumulative effect of this error should operate to infer prejudice to the defendant.

 W.Va.Code § 51–7–1 (1923) authorizes the circuit courts of the State to appoint competent reporters to take and report the proceedings of these courts. "Under the provisions of W.Va.Code, 51–7–1 and –2, all proceedings in the criminal trial are required to be reported; however, the failure to report all of the proceedings may not in all instances constitute reversible error." Syllabus Point 5, *State v. Bolling*, 162 W.Va. 103, 246 S.E.2d 631 (1978). "Whether failure to report constitutes reversible error or not cannot be determined by a mechanistic rule, but must depend on the facts of each case." *State v. Messinger*, 163 W.Va. 447, 453, 256 S.E.2d 587, 590 (1979). Recently, in Syllabus Point 8 of *State v. Graham*, 208 W.Va. 463, 541 S.E.2d 341 (2000), we held that "[o]missions from a trial transcript warrant a new trial only if the missing portion of the transcript specifically prejudices a defendant's appeal."

Our review of the nine instances listed by the defendant wherein the trial court went off the record reveals the following. The first unrecorded instance, the defendant concedes, was simply a discussion with counsel whether to recess for the day. In the second instance, it appears that the trial court went off the record to have the court reporter read a previous portion of the transcript, after which an in-depth discussion of the objection continued on the record. The third and fourth instances do not appear to concern objections. The fifth instance appears to concern an objection by the prosecutor that defense counsel had asked the same question of a State's witness three times. The sixth and seventh instances do not appear to concern objections. The eighth instance appears to concern a defense objection to the elicited alleged double hearsay testimony of Trooper Divita, a State's witness, on direct examination. The ninth instance concerns the substitution of the juror to which the defense specifically stated that he had no objection.

We conclude from this review that the defendant's appeal was not specifically preju-diced by any of these off the record discussions. Only one of these discussions relates to an issue raised on appeal, the dismissal of the tardy juror, which was not objected to by the defendant and which we have already determined was not error. Also, defense counsel never objected to any of the off the record conferences, and never attempted to vouch the record. Finally, the defendant is unable to articulate specific prejudice to his appeal but rather urges us to infer prejudice from the off the record discussions. This we decline to do.

 Next, the defendant avers that the trial court erred in denying his motion to hire a jury specialist at public expense. According to the defendant, a jury specialist was reasonably necessary to his development of the relevant issues in the case in order to provide research and statistical data useful in the jury selection process. Further, says the defendant, the trial court did not set forth its reason for denying the motion in violation of *State ex rel. Foster v. Luff*, 164 W.Va. 413, 264 S.E.2d 477 (1980).

 W.Va.Code § 29–21–13a(e) (1997) provides that court-appointed attorneys shall be reimbursed for "[a]ctual and necessary expenses incurred in providing legal representation for proceedings of any kind involving felonies for which a penalty of life imprisonment may be imposed, including, but not limited to, expenses for travel, transcripts, salaried or contracted investigative services and expert witnesses[.]" We held in Syllabus Point 1 of *State ex rel. Foster v. Luff, supra:*

> Upon request for additional expert fees under [W.Va.Code § 29–21–13a(e) ]:[10] (1) the request should be made in writing; (2) the request should detail why the expert is needed; (3) defense counsel should be permitted an opportunity to elaborate on the motion; and (4) in denying the motion, the trial judge should place in the record the specific reasons for his ruling. (Footnote added).

---

**10.** This syllabus point originally cited W.Va.Code § 51–11–8 as the applicable code section. However, this code section, concerning "Defense of Needy Persons" was repealed by Acts 1981, c.

183. The current law is found in W.Va.Code §§ 29–21–1 et seq. concerning public defender services.

By written motion filed on November 2, 1998, the defendant's court-appointed counsel requested that he be allowed to hire a jury specialist at State expense because "this case is a murder case in which the defendant faces a possible life sentence." In a January 11, 1999 hearing, defense counsel supported his written motion by stating that he had previously hired a jury specialist and the results "were excellent." After the State argued against the motion, the trial court stated "I'm going to deny that at this time."

We find no merit to this assignment of error. The defendant completely failed to present any facts, particular to this case, which justified the hiring of a jury specialist. Instead, defense counsel merely opined that this was a murder case where a life sentence was possible, and that he had retained a specialist in a previous case with excellent results. This is plainly insufficient detail under *Luff* to support reimbursement for a jury specialist. In addition, because defense counsel failed to specify his reasons for requesting a jury specialist, any error by the trial court in failing to specify its reasons for denying the motion would be harmless.

■ The defendant next posits that the trial court erred in denying his motion for a jury view of the crime scene. According to the defendant, Matthew Fortner's eyewitness testimony of the murders described the relative positions of Fortner and the defendant when Ron Davis was shot at the door, and that evidence of spent shell casings indicate that the shot may have been fired from where Fortner was standing. Also, a neighbor testified about hearing a gunshot, and a jury view would have aided the jury in assessing the validity of the testimony. Finally, the videotape of the scene presented at trial did not show the decedent's body and its relation to the front door.

■ Concerning our standard of reviewing this issue, this Court has held that "[a] motion for a jury view lies peculiarly within the discretion of the trial court, and, unless the denial of such view works probable injury to the moving party, the ruling will not be disturbed." Syllabus Point 1, *Collar v.*

*McMullin,* 107 W.Va. 440, 148 S.E. 496 (1929).

At the February 5, 1999 hearing, defense counsel supported his motion for a view of the crime scene by stating:

> Although [the house] was burned partially,[11] there's enough of it left for the jury to get an idea of where things were at the time the police entered the crime scene . . . .

> * * *

> To see the crime scene, Your Honor, will reveal much as to—I don't want to speak too much today. I don't want to divulge too much of the defense's case. But it would show the jury an enormous amount about what was going on in that house at the time and prior to the arson of it. (Footnote added).

In response, the State argued that the crime scene was not the same as at the time of the murders due to the subsequent arson; the damage to the crime scene rendered it dangerous, i.e., someone could fall through the floor; photographs and a videotape of the crime scene would enable the jury to visualize the scene; the scene was an hour's bus ride away; and the jurors would have to walk up a steep driveway. The trial court concluded that the defendant made an insufficient showing of need for a view of the crime scene.

The trial court was correct. Defense counsel offered no specific reasons below to support his motion for a view of the scene while the State offered several legitimate reasons in opposition. Although on appeal the defendant offers two pieces of testimony in support of the need for a view, the trial court was never given the opportunity to consider this evidence. Further, while the defendant now complains that the videotape of the crime scene did not show Ronald Davis's body and its location relative to the front door, it was the defendant who moved below for the redaction from the videotape of the victims' bodies. Accordingly, we conclude that the denial of the crime scene view did not work probable injury to the defendant.

**11.** This refers to the fact that Ronald Davis's house was partially burned by an act of arson.

■ In his ninth assignment of error, the defendant claims that the trial court erred in deviating from the alternate juror selection procedure set forth in Rule 24(c) of the West Virginia Rules of Criminal Procedure and by granting both sides additional peremptory challenges to the potential alternate jurors.

The trial court initially identified 26 acceptable jurors after voir dire. The trial court then instructed its clerk to randomly choose six jurors to constitute the pool of potential alternates. The clerk chose jurors 10 through 15. The State was then allowed to strike two jurors from the pool of twenty potential regular jurors and two jurors from the pool of six potential alternate jurors. Defense Counsel was then permitted to strike six jurors from the pool of potential regular jurors, leaving 12, and two jurors from the pool of alternate jurors, leaving two.

On appeal, the defendant argues that a clerk should not be allowed to choose potential alternate jurors because he or she could choose jurors believed to be hostile to the outcome desired by the clerk and diminish the chance that those jurors would participate in deliberations. Second, the defendant avers that Rule of Criminal Procedure 24(c) provides that each side has only one peremptory challenge, not two.[12]

The defendant did not object below to the trial court's method of choosing the jury panel, and, under a plain error analysis, we find that no prejudice resulted to the defendant. First, the defendant makes no claim of prejudice. While the defendant raises the concern that a biased clerk could selectively choose alternate jurors, he does not contend that this occurred below. Also, we are aware of no statute, rule, or case law indicating that the trial court's method of choosing jurors was error. Finally, the additional peremptory strike, which resulted in two alternate jurors rather than four, caused no prejudice because only one alternate juror ended up on the twelve-juror panel.

■ Next, the defendant claims that the prosecuting attorney should have known there was a substantial probability that some evidence against the defendant was false, and that this false evidence materially affected the verdict. In support of this argument, the defendant cites Rule 3.3(a)(4) of the Rules of Professional Conduct which provides that "[a] lawyer shall not knowingly ... offer evidence that the lawyer knows to be false." The defendant points to the low character and incentive to lie of the State's witnesses, and appears to argue that this should have put the prosecutor on notice that these witnesses were not telling the truth. Also, the defendant asserts that the prosecuting attorney owed the defendant a more thorough investigation of Matthew Fortner before accepting his version of the facts, and notes that no testing was done on Fortner's vehicle. The defendant clarifies, however, that he is not accusing the prosecuting attorney of any knowing impropriety.

We are not convinced by the defendant's argument. Not only is there no evidence in the record which supports the claim that the prosecutor knew or should have known that evidence was false, there is no proof that any of the State's evidence was actually false. Rather, all that the defendant can demonstrate is that Matthew Fortner and other State's witnesses were disreputable persons who had reasons to lie. The witnesses' characters and motives were adduced at trial and argued at length to the jury.

■ This Court has recognized that "[a]n appellate court must ... credit all ... credibility assessments that the jury might have drawn in favor of the prosecution.... Credibility determinations are for a jury and not an appellate court." Syllabus Point 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). It was the role of the jury to weigh the evidence and make credibility assessments after it observed the witnesses and heard their testimony. The jury made its determination, and this Court will not second guess it simply because we may have assessed the credibility of the witnesses differently.

**12.** Rule 24(c) of the West Virginia Rules of Criminal Procedure provides that each side is entitled to one peremptory challenge in addition to those allowed by law if one or two alternate jurors are to be impaneled.

As his tenth assignment of error, the defendant claims that his sentence should be vacated and remanded for a presentence investigation and report, a full opportunity for allocution, and resentencing.

The defendant's trial and sentencing was bifurcated in accordance with *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).[13] At the bifurcated *LaRock* hearing, which occurred five days after the jury reached its guilty verdict, the defendant initially waived a presentence investigation and report, but later reversed himself. The trial court at first agreed that the defendant had a right to an investigation and report, but ultimately determined that no such investigation was needed. The trial court reasoned that a bifurcated *LaRock* hearing was sufficient for sentencing, adding, "I don't understand what a [presentence investigation] could add to a sentencing hearing." At the bifurcated hearing, 11 witnesses testified on behalf of the defendant and seven witnesses testified for the State. Counsel for both sides made opening statements and closing arguments.

On appeal, the defendant contends that the trial court's determination that the *LaRock* hearing satisfied the requirements of Rule of Criminal Procedure 32 was error. He also avers that he was prejudiced because if his sentences were concurrent instead of consecutive, he would be eligible for parole in fifteen years rather than thirty. The State responds that a presentence investigation is not necessary where there has been a bifurcated sentencing hearing, pursuant to *LaRock*, because at the close of the bifurcated hearing the trial court has all of the necessary information in order to sentence the defendant.

This issue is governed by Rule 32 of the West Virginia Rules of Criminal Procedure which provides, in relevant part:

(b) *Presentence investigation and report.*—(1) When made.—The probation officer shall make a presentence investigation and submit a report to the court before the sentence is imposed, unless:

(A) the defendant waives a presentence investigation and report;

(B) the court finds that the information in the record enables it to meaningfully exercise its sentencing authority; and

(C) the court explains on the record its finding that the information in the record enables it to meaningfully exercise its sentencing authority.

It is undisputed that a presentence report is mandatory under Rule 32 unless the three factors listed in (A), (B), and (C) are all present. While (B) and (C) were present below, in that the trial court found that the evidence adduced at the bifurcated hearing enabled it to meaningfully exercise its sentencing authority and explained this on the record, it is uncontested that the defendant did not waive a presentence investigation and report. We recently recognized that "[t]he West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction[.]" Syllabus Point 5, in part, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999). Because of the unambiguous nature of Rule 32, we decline to adopt the State's position that a presentence investigation and report are not necessary when the defendant receives a bifurcated sentencing hearing. Therefore, we conclude that a presentence investigation and report were required by Rule 32 prior to the defendant's sentencing.

Even though the defendant did not specifically object below to this error, we find that the failure to prepare a presentence report constitutes plain error that resulted in prejudice to the defendant. As noted above, the defendant's sentence of consecutive life terms means that he would not be eligible for parole for thirty years, whereas a sentence of concurrent life sentences would result in parole eligibility after fifteen years. Therefore, a presentence investigation and report could result in a significant change in the defendant's sentence. Accordingly, because the trial court failed to properly apply Rule 32, and this failure may have adversely affected

13. Syllabus Point 4 of *State v. LaRock, supra,* says that "[a] trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy."

the defendant's sentence, we reverse the defendant's sentence and remand for the preparation of a presentence report in accordance with Rule 32 and a new sentencing hearing.[14]

■ Last, the defendant urges this Court to reverse his convictions under the cumulative error doctrine. According to the defendant, this case is particularly ripe for use of the doctrine because of the weak nature of the evidence against him. For example, Michael Fortner testified against the defendant after receiving a plea bargain granting him mercy on one first degree murder charge. Joey France escaped prosecution for breaking and entering to testify against the defendant. Also, he owned the murder weapon and his palm print was the only print found on the weapon. In addition, Michael Mount was given immunity for breaking and entering in exchange for testifying against the defendant. Finally, none of the testimony was corroborated by scientific evidence.

■ In Syllabus Point 5 of *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972), this Court held that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error."

We have heretofore determined that allowing a thirteenth juror to attend jury deliberations; the defendant's absence from a discussion concerning jury instructions; the trial court's off the record discussions with counsel; and permitting counsel of both sides an additional peremptory strike of potential alternate jurors constituted harmless error. We believe that these errors, when viewed in the context of the entire trial below and the evidence adduced, were not numerous and did not prevent the defendant from receiving a fair trial. Accordingly, we affirm the defendant's conviction of two counts of first degree murder with mercy.

### III.

### CONCLUSION

For the reasons stated above, we affirm the defendant's conviction of two counts of first degree murder with mercy. However, we reverse his sentence of consecutive life terms and remand for the preparation of a presentence report, in accordance with Rule 32 of the West Virginia Rules of Criminal Procedure, and a new sentencing hearing.

Affirmed in part, reversed in part, and remanded.

Justice ALBRIGHT, deeming himself disqualified, did not participate in the decision of this case.

Judge JAY M. HOKE sitting by special assignment.

STARCHER, Justice, dissenting.

(Filed July 24, 2001)

I dissent because this defendant's conviction was obtained under circumstances that amounted to a less-than-fair trial. Specifically, there was an illegal "guest" in the jury room—an alternate juror, who had absolutely no right to be there.

The majority makes the argument that this illegal person in the jury room "did not participate" in the jury's deliberations. But surely we cannot be so naive as to believe that the legitimate jurors never interacted in any way with the illegal person in the jury room, that the illegal person never "raised an eyebrow" or "made a frown" during the deliberations. Nor am I inclined to rely on juror affidavits as to what happened in the jury room, to excuse clearly illegal conduct in connection with a criminal conviction.

The majority's argument could logically extend to having several alternate jurors in the jury room. And if "non-participation" in the jury's deliberations is the test, why not invite the bailiff to sit in, too—as long as he or she promises to keep quiet?

As Chief Justice McGraw stated in his dissent in *State v. Lightner*, 205 W.Va. 657,

---

**14.** Because we are remanding this case for a new sentencing hearing, we do not find it necessary to address the defendant's claim that he was not

provided a meaningful and effective opportunity to allocute.

664, 520 S.E.2d 654, 661 (1999) (a dissent in which I joined):

In clear contrast to the view of the majority of this Court, I view a defendant's right to a jury of twelve as a fundamental constitutional privilege. Indeed, the express directive contained in Article III, § 14 of the *West Virginia Constitution,* which commands that all criminal trials "shall be by a jury of twelve," leaves room for no other conclusion. Thus, any deviation from this constitutional requirement must be accomplished through a knowing and intelligent waiver.

In addition to improperly excusing the aforesaid clear violation of the *West Virginia Constitution* that underlies the appellant's criminal conviction, the majority opinion responds to each of the appellant's other assignments of error—including the denial of a continuance, the denial of a jury specialist, and the denial of a jury view—with a rote repetition of the doctrines of judicial discretion and harmless error. Unlike the majority, in this close case where only the testimony of a self-serving criminal implicated the defendant, I would hold that the multiple adverse rulings of the trial judge toward the appellant constituted cumulative error that also requires reversal of the appellant's conviction.

I would reverse and remand for a new trial, and I think this Court is now ready to revisit *Lightner.*

MCGRAW, Chief Justice, dissenting.
(Filed July 25, 2001)

I would reverse Brown's conviction for the same reasons expressed in my dissent to *State v. Lightner,* 205 W.Va. 657, 520 S.E.2d 654 (1999), in that "any deviation from th[e] constitutional requirement [of twelve jurors] must be accomplished through a knowing and intelligent waiver." *Id.* at 664, 520 S.E.2d at 661 (McGraw, J., dissenting). Resort to plain error analysis is therefore misplaced in this context, and a violation of the constitutional right to a twelve-person jury must be presumed prejudicial absent an affirmative showing that the error was harmless beyond a reasonable doubt. *See* syl. pt. 5, *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975) ("Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt."). Contrary to the position taken by the majority, the fact that the alternate did not actively participate in deliberations is far from dispositive, as prejudice may arise "either because the alternates actually participated in the deliberations, verbally or through 'body language'; or because the alternates' presence exerted a 'chilling' effect on the regular jurors." *United States v. Olano,* 507 U.S. 725, 739, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993) (citations omitted). Since I would reverse and remand for a new trial on this issue, I respectfully dissent.