# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 17-0610** (Wood County 16-F-100)

**Phillip Harvey Wise,**
**Defendant Below, Petitioner**

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Phillip Harvey Wise, by counsel George J. Cosenza, appeals the Circuit Court of Wood County's June 26, 2017, order denying his motion for a new trial following the imposition of a recidivist life sentence upon his conviction of being a prohibited person in possession of a firearm and misdemeanor assault. The State of West Virginia, by counsel Robert L. Hogan, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a new trial because the State's primary witness "was a completely unreliable witness" and presented false testimony at his trial.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2016, petitioner picked up his ex-wife ("the victim") and took her to his home so they could discuss their relationship. According to the victim, petitioner "[b]asically . . . wanted [her] to admit that [she] had been cheating on him." Once they arrived at the home, petitioner began questioning the victim regarding her alleged infidelity, which she denied. According to the victim, this conversation lasted approximately fifteen minutes and "was a good talk" highlighted by petitioner's calm demeanor. During this conversation, the victim testified that petitioner produced the drug Adderall, and that she snorted some because petitioner made her.

Eventually, petitioner instructed the victim to go to the basement, where he told her to put on a harness and lie down with her hands tied behind her back on a seat that had been removed from a van. According to the victim, petitioner did not physically force her to do this, but his request made her nervous and she felt like things "would have been worse" if she had not complied. At this point, the victim indicated that the "seat [got] flipped somehow" which resulted in her "hanging off it[.]" The victim testified that petitioner waterboarded her by putting a rag over her face and pouring water over it. Petitioner then resumed questioning the victim

1

about alleged infidelities and any other lies he believed she may have told him during their relationship. When the victim maintained that she had not cheated on petitioner, he resumed waterboarding her several more times. Eventually, in order to make petitioner stop, the victim told petitioner that she had cheated on him. Upon this admission, petitioner ceased his actions and took the victim back upstairs.

Once upstairs, although calm, petitioner again questioned the victim about incidents that occurred during their marriage. At some point during this conversation, petitioner and the victim engaged in sexual intercourse. According to the victim, she used the sexual encounter "to . . . make [petitioner] calm down" and as a means of protecting herself and gain control of the situation. Afterward, the victim indicated that petitioner needed cigarettes and that if he did not have them "it would agitate him." So, according to her testimony, the victim left in petitioner's van to obtain more cigarettes, although she indicated that if she had not returned in five minutes she "would have gotten in trouble" with petitioner. The victim further testified that she did not alert anyone at the gas station where she purchased the cigarettes that anything was wrong because she was afraid of petitioner and that if she caused him to get into trouble she "would suffer for it."

Upon returning to the home, petitioner eventually forced the victim to shave her head. When she began to comply, the two became involved in an altercation that resulted in petitioner shooting the victim with a crossbow. In total, the victim testified that petitioner shot her with the crossbow seven times on the night in question. According to the victim, petitioner also shot her in the foot with a .22 caliber rifle. At various points, petitioner also forced the victim into a trunk and locked her therein. In fact, petitioner left the victim in the trunk overnight. The following day, petitioner let the victim out of the trunk when she began screaming upon waking. Thereafter, petitioner fell asleep on the couch, still brandishing the rifle. While petitioner slept, the victim snuck out of the home and fled on foot. When she eventually encountered an employee of a nearby business, the victim indicated that her stepson accidentally shot her. Once an ambulance and police arrived, however, the victim eventually recounted the true series of events. Law enforcement then responded to petitioner's home and apprehended him attempting to flee on foot. The victim was transported to a hospital to receive treatment. While at the hospital, the victim tested positive for the substances amphetamine and THC.

In March of 2016, as it relates to the instant appeal, petitioner was indicted on one count of malicious assault, one count of unlawful restraint, and one count of being a prohibited person in possession of a firearm.[1]

In February and March of 2017, petitioner's three-day jury trial was held. During the trial, the victim testified to the above-described events. The State also presented testimony from the arresting officer, Mike Brown of the Parkesburg Police Department. Additional testimony came from an officer who secured petitioner's home after the arrest and found no one else in the home at the time; an evidence technician who observed a large amount of blood, .22 caliber ammunition, a spent .22 caliber shell casing, and a partially disassembled .22 caliber rifle,

---

[1]The indictment also charged petitioner with two counts of first-degree sexual abuse and one count of sexual abuse by a custodian that are not related to the current appeal.

including a missing stock and trigger mechanism, in petitioner's home; and a forensic analyst, who testified to the presence of gunshot residue on petitioner's right hand.

In his defense, petitioner attacked the victim's credibility by addressing her multiple versions of events given to witnesses and the police and a prior incident in which she filed a police report against petitioner, but later recanted. Petitioner also focused on testimony from a medical doctor, who indicated that the victim's wounds appeared to be caused by a blunt instrument, due to the shallow nature of the puncture wounds, and could have been caused by something other than a bolt or arrow. At the conclusion of the trial, the jury found petitioner guilty of misdemeanor assault, a lesser-included offense of malicious assault, and being a prohibited person in possession of a firearm. The jury acquitted petitioner of the count of unlawful restraint. Petitioner thereafter filed a motion for a new trial.

In March of 2017, the State filed a recidivist information against petitioner, to which he later pled guilty after reserving the right to appeal the underlying convictions addressed herein. In May of 2017, the circuit court held a sentencing hearing. After finding that petitioner was previously convicted of two felonies, the circuit court sentenced petitioner to a term of life in prison for his conviction of being a prohibited person in possession of a firearm. The circuit court also sentenced petitioner to one year in the regional jail for his conviction of misdemeanor assault. In June of 2017, the circuit court entered an order denying petitioner's motion for a new trial. It is from the order denying his motion for a new trial that petitioner appeals.

This Court has previously established the following standard of review:

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 2, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). Upon our review, the court finds no error in the circuit court's denial of petitioner's motion for a new trial.

On appeal, petitioner argues that he "is serving a life sentence as the result of the fabrications and manipulation of" the victim. He further urges this Court "to make it clear that serial liars have no place in our legal system." Citing *Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009), petitioner argues that the presentation of false testimony that has a material effect on a trial entitles a defendant to a new trial. We note, however, that petitioner ignores the specific holding in that case.

> In order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict.

3

*Id.* at 376, 701 S.E.2d at 98, Syl. Pt. 2. On appeal, petitioner fails to specifically identify any evidence that he believes was materially false, let alone present any evidence that shows such materially false evidence was presented.[2] Instead, petitioner appears to challenge the credibility of the victim.

Specifically, petitioner argues that the victim previously recanted allegations against him in another matter; initially told a witness and law enforcement a different version of events, including that her stepson accidentally shot her; and falsely testified at the preliminary hearing that she had not used any controlled substances at the time of the incident.[3] This Court has held that a basis for questioning a witness's credibility is insufficient to establish that the testimony is false. *See id.* at 381, 701 S.E.2d at 103 (holding that "an assertion [that the State's witnesses had motives to lie] is legally insufficient to sustain a claim that the State presented false testimony"); *State v. Brown*, 210 W.Va. 14, 27, 552 S.E.2d 390, 403 (2001) (holding that defendant failed to establish that the State's evidence was actually false and, instead, simply demonstrated that "State's witnesses were disreputable persons who had reasons to lie"). Not only is this evidence insufficient to establish that the testimony petitioner complains of was materially false, the jury was presented with these attacks on the victim's credibility and still convicted petitioner. As this Court has routinely held, credibility determinations are not appropriate for appellate review. *See* Syl. Pt. 2, *State v. Martin*, 224 W.Va. 577, 687 S.E.2d 360 (2009) ("The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses." (internal quotations and citation omitted)); *State v. Guthrie*, 194 W.Va. 657, 669, 461 S.E.2d 163, 175 (1995) (It is well established that "appellate review is not a device for this Court to replace a jury's finding with our own conclusion. On review, we will not weigh evidence or determine credibility"); *id.* at 669 n.9, 461 S.E.2d at 175 n.9 ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact . . . . It is for the jury to decide which witnesses to believe or disbelieve. Once the jury has spoken, this Court may not review the credibility of the witnesses."). Accordingly, we find the circuit court did not err in denying petitioner's motion for a new trial.

---

[2]Petitioner alleges that at the preliminary hearing in this matter, the victim testified that she had not used any controlled substances at or around the time of the incident in question. However, the record shows that a drug screen conducted while the victim was being treated for her injuries was positive for amphetamine and THC. At petitioner's trial, the victim testified that petitioner forced her to snort Adderall, an amphetamine, during the incident in question and that she smoked THC in the days just prior to the event. While the testimony from the preliminary hearing contradicts the victim's testimony at trial and the evidence of her drug screen, this fact does not establish that any materially false testimony was presented at trial.

[3]In support of this argument, petitioner also relies on *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981), to argue that "[i]n cases involving sexual offenders, a conviction may be overturned if the testimony of the victim is inherently incredible." Not only does petitioner fail to identify what testimony is "inherently incredible," but he also ignores the fact that he was not convicted of a sexual offense. Accordingly, this case is not applicable to the instant appeal.

For the foregoing reasons, we affirm.

                                                                                Affirmed.

**ISSUED:** October 12, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.