728 S.E.2d 111

**Michael V. COLEMAN, Acting Warden, Mount Olive Correctional Complex, Respondent Below, Petitioner**

v.

**Michael BROWN, Petitioner Below, Respondent.**

**No. 11–0378.**

Supreme Court of Appeals of West Virginia.

Submitted May 22, 2012.

Decided June 1, 2012.

---

Darrell V. McGraw, Jr., Esq., Attorney General, Barbara H. Allen, Esq., Managing Deputy Attorney General, Charleston, WV, for Petitioner.

James M. Cagle, Esq., Charleston, WV, for Respondent.

PER CURIAM:

This case is before this Court upon the appeal of the petitioner, Michael V. Coleman, Acting Warden, Mount Olive Correctional Complex, from the January 7, 2011, order of the Circuit Court of Cabell County granting the respondent, Michael Brown, relief in habeas corpus. In the underlying action, the respondent was convicted of two counts of murder in the first degree, with mercy, and sentenced to two consecutive terms of life imprisonment. In the habeas proceeding from which the petitioner appeals, the circuit court set aside the convictions and granted the respondent a new trial. The basis of the circuit court's ruling was that a juror in the criminal trial failed to answer certain questions during *voir dire*. The circuit court concluded that in light of this Court's recent decision in *State v. Dellinger*, 225 W.Va. 736, 696 S.E.2d 38 (2010), the juror's lack of candor deprived the circuit court and the parties of the ability to determine the juror's fitness to serve, which foreclosed the respondent's constitutional right to a fair trial. Contending that a new trial is unwarranted, the petitioner asks this Court to reverse the circuit court's order and to remand this case to the circuit court for an adjudication of the respondent's remaining habeas corpus issues. Based upon the parties' briefs and arguments in this proceeding, the relevant statutory and case law, and the extensive material from both the habeas corpus proceeding and the criminal trial, this Court is of the opinion that the circuit court committed reversible error in granting the respondent a new trial. Accordingly, for the reasons stated below, the January 7, 2011, order of the circuit court is reversed, and this case is remanded to the circuit court for further proceedings with regard to any unresolved habeas issues.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 4, 1999, the respondent was convicted of two first degree murders, with

mercy, and received two consecutive life sentences. The respondent's convictions were affirmed on unrelated grounds by this Court on direct appeal in *State v. Brown*, 210 W.Va. 14, 552 S.E.2d 390 (2001),[1] and the facts of the case were set forth in the opinion. In short, on August 17, 1997, Ronald Davis and Gregory Black were found dead of gunshot wounds in Black's residence in Cabell County. The homicides were drug-related.[2]

While the petitioner's two murder convictions were affirmed, this Court concluded that the State's failure to prepare a presentence report was plain error and remanded the case to the circuit court for the preparation of a presentence report and a new sentencing hearing. *See* W.Va. R.Crim. P. 32(b) concerning presentence investigations and reports.[3] On July 6, 2001, after considering the presentence report, the circuit court reimposed the original sentence of two consecutive terms of life imprisonment, with a finding of mercy.

The respondent filed a petition for a writ of habeas corpus [4] on May 2, 2002, which was amended on July 25, 2005.[5] The petition was again amended on May 14, 2009, wherein the respondent alleged for the first time, *inter alia*, that the actions of a juror created a presumption of bias on the part of that juror and a presumption of prejudice against the respondent. During the course of the habeas proceedings, Circuit Judge Dan O'Hanlon granted leave for the parties to take the deposition of the juror in question, Brenda Foster (now Brenda Wickline and hereinafter

"Juror Wickline"), which was conducted on December 30, 2009.

Juror Wickline stated in both an affidavit, dated August 14, 2009, and during her December 30, 2009, deposition, that she did not disclose during *voir dire* or thereafter: (1) that her son had been indicted in Cabell County and was scheduled at a later date to appear for trial in front of Judge O'Hanlon (the trial judge in the respondent's case); (2) that she did not personally know, but had heard of Assistant Prosecutor Martorella (whose name was read during *voir dire* as a member of the Prosecutor's Office) because Martorella was the prosecutor assigned to her son's case; and (3) that four days into the respondent's trial, she saw her son's attorney, Lee Booten, in the back of the courtroom and that he seemed to be the attorney for one of the State's witnesses, and she did not inform the court upon making that observation. During her deposition, Juror Wickline explained that her non-disclosures were due, in part, to the fact that she was frightened and intimidated by the trial process and also because she was ashamed of her son's criminal trouble. Juror Wickline maintained, however, that she was fair, unbiased, and impartial as a juror at the respondent's trial.

Judge O'Hanlon held a habeas hearing to consider the arguments on the issue of Juror Wickline's non-disclosures and denied relief on March 31, 2010. Through an April 12, 2010, amended order, the circuit court did, however, grant the respondent's request to raise other issues in his habeas proceedings

---

1. The issue in the current matter was not before this Court in *State v. Brown*.

2. The respondent, along with Matthew Fortner and Joe France, belonged to a group of friends who regularly drank alcoholic beverages and took illicit drugs. According to the State, the respondent, accompanied by Fortner and France, went to the Black residence on August 15, 1997, to steal drugs. Upon arrival, Fortner saw the respondent immediately shoot and kill both victims. 210 W.Va. at 18–19, 552 S.E.2d at 394–395.

3. W.Va. R.Crim. P. 32(b)(1) provides, in part, that: "The probation officer shall make a presentence investigation and submit a report to the court before the sentence is imposed. . . ." While there are exceptions to this rule, none of those exceptions applied in the respondent's case.

4. *See* West Virginia Post–Conviction Habeas Corpus Act, W.Va.Code § 53–4A–1 [1967], *et seq.* *See also* Rules Governing Post–Conviction Habeas Corpus Proceedings in West Virginia. The habeas proceeding was filed under the Act.

5. The respondent initially filed his petition for a writ of habeas corpus in the Circuit Court of Fayette County raising numerous issues surrounding the Cabell County Prosecuting Attorney's failure to comply with discovery. On May 2, 2002, his petition was re-filed in (transferred to) the Circuit Court of Cabell County. Neither the original petition nor the amended petition raised the issue of the juror's ability to sit on the respondent's case as an impartial juror.

separate from the juror issue. The respondent thereafter filed a motion for reconsideration of Judge O'Hanlon's denial of habeas relief on the juror issue. The motion was heard by Judge John Cummings due to Judge O'Hanlon's retirement. On January 7, 2011, Judge Cummings issued an order in which he found that given this Court's intervening case of *Dellinger, supra,* the nondisclosure of certain information by Juror Wickline during *voir dire* raised a presumption of bias and prejudice on the part of that juror. As such, the circuit court set aside the respondent's convictions and granted him a new trial on the underlying murder charges.

The petitioner filed a motion for reconsideration which was denied by the circuit court during a February 11, 2011, hearing. On March 1, 2011, the petitioner filed an appeal with this Court.[6] On March 31, 2011, this Court granted the petitioner's motion to stay the circuit court's January 7, 2011, and February 11, 2011, orders pending the resolution of this appeal.

## II.

### STANDARDS OF REVIEW

The petitioner's assignment of error surrounds the circuit court's grant of habeas corpus relief in vacating the respondent's underlying murder convictions and granting him a new trial. This Court has previously held that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syllabus Point 1, *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975). This Court further explained in Syllabus Point 1 of *State ex rel. Dunlap v. McBride, Warden,* 225 W.Va. 192, 691 S.E.2d 183 (2010), that:

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines, Warden,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Moreover, in Syllabus Point 2 of *State ex rel. Scott v. Boles, Warden,* 150 W.Va. 453, 147 S.E.2d 486 (1966), this Court held:

There is a presumption of regularity of court proceedings in courts of competent jurisdiction that remains until the contrary appears, and the burden of proving any irregularity in such court proceedings rests upon the person who alleges such irregularity to show it affirmatively. In a collateral attack on a judgment of a court of competent jurisdiction the burden does not shift to the defendant upon the filing of a petition and affidavit to prove that the judgment is proper in all respects and that the court performed all of its duties required by law.

The more specific standards of review will be incorporated into the discussion below.

## III.

### DISCUSSION

The petitioner asserts that the circuit court erred in granting habeas corpus relief by setting aside the respondent's murder convictions and granting him a new trial.[7]

---

6.  *See* W.Va.Code § 53–4A–9(a) [1967] (A final judgment entered by a circuit court under the provisions of the West Virginia Post–Conviction Habeas Corpus Act may be appealed to this Court by either party.).

7.  The petitioner sets forth as two separate arguments that the circuit court erred in concluding that this Court's decision in *Dellinger,* "mandated a finding of juror bias in the respondent's case" and that *Dellinger* "mandated a finding that the respondent was prejudiced by the juror's participation." The petitioner further argues that the circuit court's granting of relief on the juror issue was based upon inaccurate factual findings in its underlying order. The petitioner's assignments of error are redundant and, therefore, for the sake of clarity will be addressed as a single issue. *See Robertson v. B A Mullican Lumber & Mfg. Co.,* 208 W.Va. 1, 2 n. 1, 537 S.E.2d 317, 318 n. 1 (2000) (finding that five alleged errors raised by the appellant were redundant and combining the errors into two errors that were addressed by the Court); *Senkus v. Moore,* 207 W.Va. 659, 662 n. 3, 535 S.E.2d 724, 727 n. 3 (2000) (combining two assignments of error into

More specifically, the petitioner contends that the circuit court erred in concluding that this Court's decision in *Dellinger, supra,* created new law and mandated both a finding of juror bias and prejudice by the juror's participation in the respondent's case. The petitioner argues that under West Virginia law, jurors with connections to the court, parties, or issues at trial may be deemed to be constitutionally impartial even when the connections are not disclosed during *voir dire.*[8] The petitioner further contends that not all bias is unconstitutional bias, and the presence of a biased juror on a jury panel does not *per se* violate a defendant's constitutional rights.

The petitioner states that Judge O'Hanlon considered the issues surrounding Juror Wickline and correctly applied West Virginia law in denying the respondent habeas relief. The petitioner contends that nothing changed in the intervening months between Judge O'Hanlon's retirement and Judge Cummings' appointment to the respondent's case to warrant a reversal of Judge O'Hanlon's denial of habeas relief. The petitioner argues that the circuit court erred in holding that this Court's subsequent decision in *Dellinger,* a per curiam opinion, required it to set aside the respondent's murder convictions and order a new trial. The petitioner points out that the *Dellinger* decision turned on a juror's intentional withholding of significant information during *voir dire* that included the fact that the juror had a direct relationship with the defendant and two witnesses. The petitioner states that the *Dellinger* juror repeatedly failed to be forthcoming and that those facts are clearly distinguishable from the situation that occurred in the respondent's case. Accordingly, the petitioner maintains that the circuit court's decision granting habeas relief to the respondent should be reversed.

Conversely, the respondent argues that Judge Cummings undertook a careful review of the record, considered the ruling in *Del-*

*linger,* and correctly applied that law to the known, uncontested facts, which showed that Juror Wickline had a connection to the prosecution, the trial judge, and the criminal trial process during the term of court that the respondent was tried. The respondent argues that the same result as in *Dellinger* should be reached when a prospective juror prevents meaningful follow-up inquiry by her deception because both situations resulted in an infringement of a defendant's constitutional right to be tried by an impartial jury. The respondent also contends that to the extent Juror Wickline states that she may have been confused about certain *voir dire* questions or misinterpreted them, jurors must be expected to listen to the questions asked and to have heard and understood them, just as courts presume that jurors hear and understand jury instructions as to the law.

▮▮▮ Upon review, the record shows that in her deposition, as well as in her affidavit, Juror Wickline consistently maintained her impartiality, and the record does not reflect otherwise. This Court has previously stated that "[t]he relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant." Syllabus Point 4, in part, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996). In Syllabus Point 5 of *Miller,* this Court held that: "Actual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." Moreover, this Court has explained that: " ' "A trial court's failure to remove a biased juror from a jury panel does not violate a defendant's right to a trial by an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 14 of Article III of the West Virginia Constitution. In order to succeed in a claim that his or her constitutional right to an impartial jury was violated,

---

one); *Evans v. Holt,* 193 W.Va. 578, 587 n. 2, 457 S.E.2d 515, 524 n. 2 (1995) (combining ten issues into one discussion); *Harrison v. Town of Eleanor,* 191 W.Va. 611, 619 n. 8, 447 S.E.2d 546, 554 n. 1 (1994) (finding the appellant's assignments of error to be redundant).

**8.** *See* Syllabus Point 6, *State ex rel. Farmer v. McBride,* 224 W.Va. 469, 686 S.E.2d 609 (2009), *infra.*

a defendant must affirmatively show prejudice." Syl. Pt. 7, *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995).' Syllabus Point 6, *State ex rel. Quinones v. Rubenstein*, 218 W.Va. 388, 624 S.E.2d 825 (2005)." Syllabus Point 6, *State ex rel. Farmer v. McBride*, 224 W.Va. 469, 686 S.E.2d 609 (2009).

In his January 7, 2011, order, Judge Cummings explained that Judge O'Hanlon's prior decision denying habeas corpus relief to the respondent was based upon the law as it existed at that time. Judge Cummings explained, however, that after the issuance of that order, this Court decided the *Dellinger* case. Through his order, Judge Cummings found that the *Dellinger* decision "warrants [the circuit court's] revisiting the issue of a juror's actions at [the respondent's] trial." The circuit court found that in light of *Dellinger*, "[b]ias from [Juror Wickline's] presence on the jury must be presumed from the totality of the circumstances[ ]" and that "[f]rom the totality of these circumstances, prejudice must be presumed from Ms. Wickline's service as a juror in [the respondent's] trial."

The circuit court's interpretation of this Court's decision in *Dellinger* is overly broad and not consistent with this Court's holding. Moreover, the situation in *Dellinger* is clearly distinguishable from the facts of the respondent's case. As previously stated, *Dellinger* was a per curiam opinion based upon the specific facts of that case as applied to our existing law; it did not create any new points of law. In *Dellinger*, a juror intentionally failed to disclose substantial personal connections to the defendant and two witnesses during *voir dire*, including direct contact with the defendant just prior to his trial. 225 W.Va. at 738, 696 S.E.2d at 40. The juror in *Dellinger* failed to disclose that she was "friends" with the defendant on a social networking website and had even sent him a message *one week prior to the defendant's trial* telling him:

> I think you could use some advice! I havent been in your shoes for a long time but I can tell ya that God has a plan for you and your life. You might not understand why you are hurting right now but when you look back on it, it will make

perfect sence [sic]. I know it is hard but just remember that God is perfect and has the most perfect plan for your life. Talk soon!

*Id.* During *voir dire*, when all of the prospective jurors were asked whether they had a business or *social relationship* with the defendant, the *Dellinger* juror remained silent. *Id.* During the post-trial investigation of the juror's relationship with the defendant, the juror admitted that she knew the defendant, that she would speak with him on occasion, and that she had also lived in the same apartment complex as the defendant. *Id.* at 738–739, 696 S.E.2d at 40–41. Not a single mention of the juror's personal and direct contact or her relationship with the defendant was provided to the circuit court during *voir dire*. When asked on direct examination why she did not respond to the *voir dire* question of whether she knew the defendant, she replied: "Bad judgment, I guess." On cross examination, the juror was asked whether she would have replied that she knew the defendant if given the opportunity to answer the question all over again. She replied:

> I believe that God was telling that I should've and disobeyed. So, yeah, I figure I probably would have said something just to keep my heart in the right place.... But I feel now, with all this going, maybe I should have at least said that, you know, that he was on MySpace, which really isn't that important, I didn't think.

The *Dellinger* juror's complete lack of candor before the circuit court was not limited to her relationship to the defendant. As this Court explained:

> When she and the other prospective jurors were asked whether any of them are "related by blood or connected by marriage to or have any business or social relationship with any" of the witnesses named, Juror Hyre again remained silent. In so doing, she failed to disclose the fact that she is related by marriage to witness Theresa Frame, who testified in her capacity as a Braxton County Commissioner. Mrs. Frame's daughter, Kirk Frame, is Juror Hyre's sister-in-law and, indeed, it was

also revealed that the two are close, personal friends. It is undisputed that Juror Hyre did not disclose her relationship "by marriage" to Mrs. Frame or her social ties to Mrs. Frame's daughter.

*Id.* The *Dellinger* Court further explained,

It is also undisputed that, during voir dire, Juror Hyre did not advise the court that her brother-in-law worked for another witness, Brenda Slaughter, at Braxton County EMS. By way of explanation as to why she did not disclose this information, Juror Hyre testified that she knew of Mrs. Slaughter and the fact that her brother-in-law works for her, "but other than that I do not know her."

*Id.* This Court stated in *Dellinger* that "we are mindful that '[j]ury service is a civic duty that citizens are expected to perform willingly when called upon to do so. But there is a fine line between being willing to serve and being anxious.... The individual who lies in order to improve his chances of service has too much of a stake in the matter to be considered indifferent.'" (Citation omitted). *Id.* This Court then concluded that the *Dellinger* juror made intentional and repeated omissions regarding her connections to the defendant as well as with two witnesses and held:

In this case, we hold that the trial court was clearly wrong in finding Juror Hyre to be a "fair and impartial juror." To the contrary, as demonstrated by the facts set forth above, Juror Hyre intentionally and repeatedly failed to be forthcoming about her connections to Appellant and witnesses Frame and Slaughter, arguably, in order to improve her chances of serving on Appellant's jury. Whatever her reasons for doing so, she cannot be considered to have been indifferent or unbiased.

*Id.*

The question here is whether the respondent's constitutional right to an impartial jury was violated by Juror Wickline's participation on the jury despite her non-disclosures during *voir dire.* From the outset, this Court must point out that the facts in *Dellinger* are clearly distinguishable from the facts of the respondent's case. In the respondent's case, Juror Wickline **did not** *have any* direct connections to, communications with, or knowledge about the respondent. Moreover, as explained below, while Juror Wickline did have a connection to the circuit court given her son's circumstance, that connection alone, without a showing of bias or prejudice, did not constitutionally bar her from sitting on the respondent's jury as an impartial juror.

In the respondent's case, Juror Wickline failed to inform the circuit court that her son had been indicted in Cabell County and was scheduled in the future to appear for trial in front of Judge O'Hanlon (the trial judge in the respondent's case). In an affidavit dated August 14, 2009, Juror Wickline explained that when she was asked whether any family members had ever been defendants in a criminal case, she thought the question referred to persons who had already been tried and convicted of a crime, rather than just being charged with a crime. She said she did not believe her son was a "defendant" because the question was framed in the past tense and did not apply to her son's situation because he had not yet been tried in court. During her subsequent deposition, she further explained:

Well, my first thought was that I thought well, I know he's been charged, but he's innocent until proven guilty. That was my first thought because I thought, you know, he's just been charged. Does that mean he's guilty? Is he a defendant? I guess I really did not fully understand how serious. I knew it was serious what he had done, but I didn't really understand fully, you know. I don't know, it was a very stressful and very fearful time for me. I was in a court room. I had never been in that situation before, before the Court, before the judge. I was intimidated and I was embarrassed. I didn't want people to know what my son had been charged with.

She said she did not know that she could have told the judge this information privately during a sidebar. In reviewing her deposition and her affidavit in their entirety, there is nothing in her responses to indicate that her reasons for non-disclosure resulted from any improper motive or bias toward the respondent.

The next alleged omission surrounds the respondent's contention that Juror Wickline knew of Assistant Prosecutor Martorella, whose name was read during *voir dire* as a member of the prosecuting attorney's office. Martorella was the prosecutor assigned to Juror Wickline's son's criminal case. She explained that her response to the question about whether she "knew" Assistant Prosecutor Martorella was truthful because she did not *know* him—she just recognized his name. She explained that when she was asked during *voir dire* whether she knew another witness, she promptly informed the circuit court of that relationship. She explained:

> I see Cheryl Seplocha. I knew her personally. You know, Joe Martorella was just a person who is a name, you know, nobody I knew. I mean, do you know what I'm saying? I didn't know him personally, but Cheryl I knew personally. She was a, you know, I had known her for years. She was my high school gym teacher. I had known her in personal relationships.

The record shows that Martorella was not even a prosecutor in the respondent's case. There is no evidence to support a conclusion that Juror Wickline's service on the respondent's jury created a bias or prejudice toward the respondent based upon whether she actually "knew" Martorella. In fact, there is nothing in the record to suggest that Juror Wickline was being untruthful in her responses to the circuit court. Unlike the juror in *Dellinger*, it is clear that Juror Wickline was not "anxious" to sit on the respondent's jury. 225 W.Va. at 738–739, 696 S.E.2d at 40–41.

The final alleged omission made by Juror Wickline concerns the fact that four days into the respondent's trial, Juror Wickline saw her son's attorney, Lee Booten, in the back of the courtroom talking with one of the witnesses. When questioned about why she did not bring this information to the circuit court's attention, Juror Wickline said she did not think this was a problem. She said:

> I remember seeing attorney Lee Booten in the courtroom during the Mike Brown trial. I think that occurred on the day in which Matt Fortner testified in the Mike Brown trial. I then made the connection that Mr. Fortner's lawyer was also my son's lawyer, but did not know at the time of *voir dire* that Booten also represented Fortner.

Juror Wickline further explained that due to the fact that it was a small town, seeing her son's attorney representing another person in a completely different criminal proceeding was not unexpected and that: "It didn't dawn on me that would be a problem." Having reviewed Juror Wickline's deposition, nothing whatsoever indicates that she had expressed any bias or prejudice toward the respondent or that she could not impartially judge his guilt.

As stated, Juror Wickline maintained her impartiality throughout *voir dire*, her affidavit, and during her deposition and there is nothing in the record to discredit her testimony. It is clear from the record that Juror Wickline had no interest in the outcome of the respondent's case, unlike the juror in the *Dellinger* case. Moreover, there is no evidence in the record from which it could be inferred that Juror Wickline had any actual bias against the respondent or that she "had such a fixed opinion that he or she could not judge impartially the guilt of the defendant." *See* Syllabus Point 4, *Miller, supra.* In fact, the only evidence in the record is her assertion, under oath, that she did **not** have any bias. Furthermore, Juror Wickline testified that even if she had been biased, she was more likely to have been sympathetic to the respondent due to the fact that her son had also been arrested and charged with a crime.

■ Given the absence of actual bias, the respondent had to "affirmatively show prejudice" to succeed in his contention that his constitutional right to an impartial jury was violated. *See* Syllabus Point 6, *Farmer, supra.* Under the facts of this case, and the relevant law, the respondent has failed to show any bias or prejudice resulting from Juror Wickline's participation in his criminal trial. As such, the circuit court wrongly concluded that prejudice to the respondent resulted from the "totality of the circumstances." There is no evidence that Juror Wickline's service as a juror deprived the

respondent of his constitutional rights.[9] Accordingly, the circuit court's granting of habeas corpus relief in the respondent's case must be reversed.[10]

## IV.

### CONCLUSION

For the reasons stated above, this Court reverses the order of the Circuit Court of Cabell County entered on January 7, 2011, and this case is remanded to the circuit court for further proceedings with regard to any unresolved habeas issues.

Reversed and Remanded With Directions.

Chief Justice KETCHUM and Justice McHUGH dissent and reserve the right to file dissenting opinions.

KETCHUM, C.J., dissenting:

In *United States ex rel. McCann v. Adams, Warden,* 126 F.2d 774 (2nd Cir.1942), Judge Learned Hand observed that, in a trial by jury, an individual may forfeit his or her liberty "at the hands of those who, unlike any official, are in no wise accountable, directly or indirectly, for what they do, and who at once separate and melt anonymously in the community from which they came." That observation, *a fortiori,* focuses attention on the safeguard found in the Constitution of the United States and the Constitution of West Virginia that the accused is entitled to trial "by an impartial jury." In the current matter, although this Court affirmed Michael Brown's convictions on direct appeal in *State v. Brown,* 210 W.Va. 14, 552 S.E.2d 390 (2001), the assignments of error therein substantially concerned the legitimacy of the jury. In fact, both dissents in *Brown* concerned the jury. Now another and, in my view, a more serious issue has been raised in the habeas proceeding, this time concerning the service of juror Wickline.

In the direct appeal in *Brown,* the majority acknowledged that no physical evidence linked Brown to the crimes, and one of the dissenting opinions asserted that "only the testimony of a self-serving criminal implicated the defendant," 210 W.Va. at 30, 552 S.E.2d at 406. In fact, co-defendants Fortner and France were ultimately arrested in Florida in connection with an unrelated robbery and were found in possession of the weapon used in the Cabell County shootings of Davis and Black. Those circumstances coupled with a problematic jury, concerning which is now added the material non-disclosures of juror Wickline, suggest a result at trial which is forever tainted. Although the matters surrounding juror Wickline's son would have logically precluded her presence on the jury, her intentional non-disclosure of those matters rendered the voir dire process, at least as to her, meaningless. Accordingly, the majority's reversal of the new trial granted by the habeas court is unwarranted, and I therefore dissent.

Throughout the habeas proceedings, each party asserted that juror Wickline, no doubt, favored the other in the underlying trial. Whereas Michael Brown contended that Wickline sought to convict him to curry favor with the State in view of her son's impending prosecution, the State cited Wickline's deposition, given ten years after the trial, stating that she "was more apt to show mercy toward Michael Brown, if anything." The import of those respective assertions, however, is obvious. Had juror Wickline responded

---

9. The petitioner has also argued that any error with respect to seating Juror Wickline was harmless. *See* W.Va. R.Crim. P. 52(a) concerning harmless error which states: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Having resolved this case in the petitioner's favor, this issue is now moot.

10. The respondent filed two cross-assignments of error with this Court concerning: (1) the denial of discovery of the mental health records of a witness who testified at the respondent's trial, and (2) the proper interpretation of a statute relating to juror disqualification. These issues are still pending in the respondent's underlying habeas corpus action and have not been considered by the circuit court. Those issues may be pursued through the respondent's pending habeas proceeding. It has been firmly held that: " 'This Court will not consider questions, nonjurisdictional in their nature, not acted upon by the circuit court as an intermediate appellate court.' Syllabus Point 1, *Pettry v. Chesapeake & Ohio Railway Company,* 148 W.Va. 443, 135 S.E.2d 729 (1964)." *Haines v. Kimble,* 221 W.Va. 266, 654 S.E.2d 588 (2007).

properly to the questions on voir dire, the issue of her impartiality would have been joined, and either the State or Brown may have discovered justification for a challenge for cause or a peremptory strike.

Unlike the anonymous melting into the community referred to by Judge Hand, the lack of candor on voir dire in this case mandated a revisiting, at long last, of Wickline's participation on the jury, a jury in a capital case the outcome of which was two consecutive life sentences. As mentioned above, this Court was not unanimous in upholding that result on direct appeal. The opinion of the majority in the current proceeding minimizes the facts. As her deposition revealed, Wickline was a party in an unrelated juvenile proceeding against her son long before her son's indictment in 1998. The majority focuses on the 1998 indictment in conjunction with its discussion of Wickline's service on the jury in the Brown case. The 1998 indictment charged Wickline's son with second degree sexual assault, kidnaping and aiding and abetting. Significantly, both the unrelated juvenile proceeding and the later case against Wickline's son, initiated by the 1998 indictment, were before Circuit Court Judge O'Hanlon, the trial judge in the Michael Brown case. Adding to the circumstances is that, at one point during the trial of Brown, the trial of Wickline's son on the indictment was to be *the very next trial* on Judge O'Hanlon's docket.

Wickline had attended the proceedings in her son's felony case and had posted his bond. Moreover, she retained his attorney, Lee Booten. As it happened, Booten also represented Matthew Fortner, the State's key witness and former co-defendant in the Michael Brown case. Upon seeing Booten in the courtroom during the Michael Brown trial, Wickline deduced that her son's attorney also represented Matthew Fortner. Moreover, Wickline knew that Joseph Martorella, mentioned during voir dire in the Brown case, was the prosecutor assigned to her son's case.

None of the above facts were disclosed by juror Wickline during voir dire or otherwise during the trial of Michael Brown.

In the underlying trial of Brown, the prospective jurors, including Wickline, were advised that they were about to engage "on one of the most serious matters that can ever occur in the criminal justice system, the trial of a man charged with first degree murder." Judge O'Hanlon then stated:

Although none of us like to be nosey and get into your personal or private business, obviously, we're going to have to ask you some question, the answers to some of which may be embarrassing for you. And, so, if you feel that the answer to a question is something you would rather not be talking about out here in front of God and country, say, Judge, I wonder if I could come over to the side bar and talk to you about that. * * * So, we'll be happy to come over here and take it up in private with you at a side bar conference so that you don't have to tell some personal thing about yourself or your family to everyone else here when it's none of their business.

Thereafter, the prospective jurors were sworn to answer any and all questions asked of them, and, during the course of voir dire, 13 jurors were excused for cause. Among the questions, the prospective jurors were asked whether "[a]ny of you have family members who have been defendants in a criminal case?" Juror Wickline gave no response. Worth noting as to that question is *W.Va.Code*, 56–6–14 [1923], which provides: "No person shall serve as a juror at any term of a court during which he has any matter of fact to be tried by a jury, which shall have been, or is expected to be, tried during the same term." As indicated above, at one point during Brown's trial, the trial of Wickline's son, under the 1998 indictment for sexual assault, kidnaping and aiding and abetting, was to be the very next trial on Judge O'Hanlon's docket. Juror Wickline had attended the proceedings in her son's case and had posted his bond.

In granting relief in habeas corpus, Judge Cummings concluded:

While the juror may have made his or her own decision about his or her qualifications to serve, a prospective juror is not the judge of his or her own qualifications. The *Dellinger* case makes it clear that a

juror who engages in this lack of candor takes away the ability of counsel or the Court to determine a juror's ability to serve or for counsel to determine whether or not to make a challenge. * * *

Had she been forthcoming, any doubts the Court may have had about Ms Wickline's service likely would have been resolved in favor of dismissing Ms. Wickline as a juror for cause. Ms Wickline also observed other jurors presenting their backgrounds to the court and to counsel and stating their relationships to the accused, the prosecution team, and witnesses.

I find the comments of Judge Cummings well taken. Although questioning during voir dire in a criminal case should never be an endurance contest, nor is it a trivial matter. Whereas it may be helpful to distinguish on a fact basis various decisions of this Court concerning voir dire, the uniformity of those decisions is made clear in the acknowledgment of their centralized source of authority, the constitutional right to an impartial jury as made certain through the disclosure by prospective jurors of material facts.

I am authorized to state that Justice McHUGH joins with me in this dissent.