# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-0361** (Monongalia County 03-F-132)

**Aron Freeland,**
**Defendant Below, Petitioner**

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Aron Freeland, by counsel Timothy P. Rosinsky, appeals the Circuit Court on Monongalia County's March 15, 2017, order denying his motion for a new trial and motion to reopen evidentiary proceedings. Respondent State of West Virginia, by counsel Robert L. Hogan, filed a summary response to which petitioner replied pro se.[1] On appeal, petitioner argues that the circuit court erred in denying his motions based upon juror misconduct and that his prior counsel should have been removed below.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 5, 2003, petitioner was indicted on two counts of second-degree sexual assault involving two different victims on two different days. Following an April of 2005 jury trial, petitioner was convicted on both counts of the indictment. On May 18, 2005, the circuit court sentenced petitioner to two consecutive terms of ten to twenty-five years of incarceration. This Court refused petitioner's subsequent appeal on February 16, 2006. On June 6, 2005, petitioner filed a motion for reconsideration of sentence. The circuit court denied the motion. Petitioner appealed the denial of that motion; this Court refused his petition on October 11, 2007.

---

[1]On October 17, 2018, this Court granted petitioner's counsel's motion for leave to file petitioner's pro se reply pursuant to Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure.

1

On April 6, 2007, petitioner filed a petition for a writ of habeas corpus. Counsel was appointed, and an amended petition was filed on June 9, 2009. On December 17, 2010, the circuit court denied the petition. On appeal, this Court affirmed the circuit court on April 5, 2013. *See Freeland v. Ballard*, No. 11-0126, 2013 WL 1395890 (W. Va. Apr. 5, 2013) (memorandum decision).

On January 26, 2016, petitioner filed "Defendant's Motion In Arrest of Judgment Rule 34 West Virginia Rules of Criminal Procedure," alleging that a juror, Linda Ammons, failed to disclose at trial that she knew one of the witnesses at trial, Officer Jason Ammons of the Morgantown Police Department.[2] In April of 2016, petitioner's motion was amended and converted to a motion for new trial. The circuit court held two hearings on the motion wherein Ms. Ammons and Officer Ammons testified. On March 28, 2016, Officer Ammons testified regarding his relationship, if any, to Ms. Ammons:

> [The State]: When you were called for testimony, did you recognize a juror that you've come to learn [whose] name is Linda Ammons?
>
> [Officer Ammons]: Yes, ma'am.
>
> [The State]: Did you know that was her name when you testified?
>
> [Officer Ammons]: No, ma'am.
>
> [The State]: Did you now come to realize that the person that they reference that is named Linda Ammons that is referenced in this motion is a face that you recognized during your testimony?
>
> [Officer Ammons]: Yes, ma'am.
>
> [The State]: Would you have recognized that face? Was it a public recognition or personal or social recognition or something else?
>
> [Officer Ammons]: Public recognition.
>
> [The State]: Tell us how.
>
> [Officer Ammons]: My mother was a schoolteacher at Jakes Run Elementary, which I would have went to events there as her being a teacher, chaperone, and I had seen that lady at some of the events at the school for different things, just to see her by, you know, vision.
>
> [The State]: Because she would have had a child at that school and as well be a

---

[2]Ms. Ammons and Officer Ammons are not related.

2

volunteer at that school?

[Officer Ammons]: To the best of my knowledge, yes.

[The State]: Would you have ever had a conversation with her or spoken with her socially in any other capacity?

[Officer Ammons]: Other capacity, no.

[The State]: Have you ever socialized with her, seen her in a family setting, anything like that?

[Officer Ammons]: No family setting, unless I was introduced at the school as my mom saying this is my son, and I would have been anywhere from one to, maybe 12 or 13. I'm not sure when my mom left Jakes Run. She could tell you.

[The State]: And so other than from the time you were 12 years old backwards, would you have seen that person or had a conversation with her?

[Officer Ammons]: No, ma'am, just events where – and even at Clay Battelle High School where my cousins went, if we went to a basketball game, she may have been there with her kids or her nieces or nephews, but not to socialize or talk.

. . . .

[Officer Ammons]: And I didn't know her personally.

On June 30, 2016, Ms. Ammons testified regarding her relationship, if any, to Officer Ammons at the time of the trial in 2005:

[The State]: Did you know Jason Ammons in 2005?

[Linda Ammons]: I knew who—I know his mom and dad. I don't know him personally. I don't—that was the first time I had seen Jason, probably, since he was 10 or 12 years old.

[The State]: But you did know who he was?

[Linda Ammons]: I knew when they said his name, yes, but I didn't know—if they had never told me his name, I probably would've not recognized him, because I haven't seen him for years.

. . . .

[The State]: When you say that you had last seen Jason Ammons when he was 12

or 13 years old, in what context or in what setting was that?

[Linda Ammons]: That was at Jake[]s Run Elementary School where his mom taught school.

. . . .

[Defense Counsel]: …Did you recognize [Jason Ammons] when he stood up during jury selection or when he testified?

[Linda Ammons]: When he testified.

[Defense Counsel]: You did not know who he was at jury selection?

[Linda Ammons]: No.

On July 8, 2016, petitioner filed a pro se motion for new counsel. According to petitioner, he requested a new attorney because his counsel failed to call Andrea Reese, a private investigator. According to petitioner, this witness uncovered information that could have discredited Ms. Ammons's prior testimony. Attached to his motion for a new trial was an affidavit from Ms. Reese executed on September 3, 2013, averring the content of a short phone call to Ms. Ammons. The affidavit averred that Ms. Ammons stated that she had known Officer Ammons "for many years as his mother was her kid's school teacher"; that he was "a very nice person"; that she knew him "real well"; that he was "always nice to her"; and that if she recognized him in public she would acknowledge him.

On August 22, 2016, per petitioner's request, counsel filed a motion to reopen the record for further evidentiary proceedings, requesting the circuit court allow Ms. Reese's testimony. The circuit court denied the motion for new counsel by order entered November 2, 2016. In a final order entered March 15, 2017, the circuit court denied petitioner's motion for a new trial, as well as his motion to reopen evidentiary proceedings. The circuit court found that Ms. Ammons knew Officer Ammons's mother, who was a school teacher at the elementary school Ms. Ammons's children attended approximately twenty-five years earlier; that she would not have recognized Officer Ammons at trial had he not been identified by name since his appearance had changed; that she did not realize who he was during jury selection; and that she recognized him only when he testified. The circuit court found that although Ms. Ammons did not respond when asked if she were related by blood or marriage or acquainted through business or socially with any State's witnesses, and did not alert the circuit court that she was acquainted with Officer Ammons before or during the trial, Ms. Ammons did not commit jury misconduct at petitioner's trial. It is from the March 15, 2017, order that petitioner appeals.

"In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit

4

court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus point 3, *State v. Vance,* 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 2, *State v. White*, 228 W. Va. 530, 722 S.E.2d 566 (2011).

On appeal, petitioner alleges that Ms. Ammons's untruthfulness during voir dire resulted in prejudice during his criminal trial because he was not provided the opportunity to inquire further into the relationship between Ms. Ammons and Officer Ammons to determine whether the juror had any biases or prejudices. Further, petitioner argues that prejudice and bias must be presumed based upon Ms. Ammons's relationship to Officer Ammons. Accordingly, petitioner argues that he established juror misconduct by clear and convincing evidence and, therefore, the circuit court erred in denying his motion for a new trial. We disagree.

We have previously held that

> [t]he right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14, of the West Virginia Constitution. A meaningful and effective *voir dire* of the jury panel is necessary to effectuate that fundamental right.

Syl. Pt. 4, *State v. Peacher*, 167 W. Va. 540, 280 S.E.2d 559 (1981). Here, the Court finds that petitioner was not denied an impartial jury and is not entitled to a new trial.

First, contrary to petitioner's argument regarding Ms. Ammons's alleged untruthfulness at voir dire, the record shows that Ms. Ammons did not withhold information or otherwise lie in response to any question at that stage because she had not yet recognized Officer Ammons. Instead, it was not until Officer Ammons took the stand to testify that Ms. Ammons recognized him as the son of one of the teachers at her children's elementary school. Although it is true that Ms. Ammons did not alert the circuit court that she recognized Officer Ammons when he took the stand, it is clear that she and Officer Ammons had no relationship or other connection sufficient to establish bias on her part.

This Court has held as follows:

> "Actual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." Syllabus point 5, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996).

Syl. Pt. 1, *State v. Sutherland*, 231 W. Va. 410, 745 S.E.2d 448 (2013). Further, "'[t]he relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant.' Syllabus Point 4, in part, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996)." Syl. Pt. 4, *State v. Coleman*, 229 W. Va. 227, 728

S.E.2d 111 (2012). Here, there is no evidence that Ms. Ammons would have been struck for cause during voir dire because the evidence establishes that she had almost no connection to Officer Ammons and certainly did not have a relationship with him. *See* syl. pt. 6, in part, *State v. Beckett*, 172 W. Va. 817, 310 S.E.2d 883 (1983) (ruling that a "social relationship" with a law enforcement officer who is "actively involved in the prosecution of the case" operates as a per se disqualification).

Further, as outlined above, there is simply no evidence to establish a connection between Ms. Ammons and Officer Ammons such that bias could be presumed.[3] According to the record, Ms. Ammons and Officer Ammons never spoke to one another, with, perhaps, an exception for a limited introduction when Officer Ammons was twelve years old or younger. Indeed, both witnesses testified that they did not know one another personally. Nothing establishes that this meager interaction constitutes a connection such that bias on Ms. Ammons's part can be presumed. Indeed, petitioner can cite to no authority that would require a finding that Ms. Ammons's children being taught at Officer Ammons's mother's school several years before petitioner's criminal trial would result in her having a fixed opinion such that she could not maintain impartiality during his trial.

In addressing similar fact patterns, this Court has declined to find that a new trial was warranted. In *Coleman*, a juror failed to disclose during voir dire that (1) her son had been indicted in Cabell County and was scheduled to appear before the same judge that was presiding over the trial for which she had been selected to serve on the jury; (2) that she had heard of one of the attorneys who worked at the prosecutor's office, but who was not involved in the trial for which she had been selected to serve on the jury; (3) and that, on the fourth day of trial, she saw her son's attorney in the courtroom and believed him to be representing one of the State's witnesses, but she did not disclose this to the circuit court at that time. 229 W. Va. at 230, 728 S.E.2d at 114. Ultimately, this Court ruled that the defendant was not entitled to a new trial based on these facts because he could not establish that the juror in question was biased, but also because, "[g]iven the absence of actual bias, the [defendant] had to 'affirmatively show prejudice' to succeed in his contention that his constitutional right to an impartial jury was violated." *Id.* at 235, 728 S.E.2d at 119 (citing syl. pt. 6, *State ex rel. Farmer v. McBride*, 224 W. Va. 469, 686 S.E.2d 609 (2009)).

In the matter on appeal, petitioner points to no evidence of prejudice resulting from Ms. Ammons's participation in his criminal trial. In fact, petitioner does not even allege that he was

---

[3]While it is true that petitioner was precluded from inquiring into a potential relationship between Ms. Ammons and Officer Ammons at trial, the record shows that during the hearings on petitioner's motion for a new trial, respondent asked Ms. Ammons if she was biased based on her tenuous connection to Officer Ammons. Before Ms. Ammons could respond, petitioner objected to the question and the circuit court sustained the objection. On appeal, petitioner asserts that bias must be presumed because of alleged juror misconduct while ignoring that he is directly responsible for the fact that Ms. Ammons was denied an opportunity to admit actual bias, if any existed, based upon this issue. As such, the analysis herein focuses solely on whether bias can be presumed under the specific facts of this case.

prejudiced in any way, other than to assert that Ms. Ammons was biased and, therefore, his constitutional right to an impartial jury was violated. However, as set forth above, there is no evidence that Ms. Ammons was biased or that, given her connection to Officer Ammons, bias could be presumed. To the extent petitioner argues that Ms. Reese's affidavit evidences a stronger connection than that testified to by Ms. Ammons and Officer Ammons, the circuit court considered the evidence and disagreed. We decline to disturb the circuit court's credibility determination. *See State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). In short, petitioner has simply failed to carry his burden of affirmatively showing prejudice resulting from Ms. Ammons's participation in his criminal trial. As such, we find no error in the circuit court's denial of his motion for a new trial.

Finally, petitioner argues that the circuit court abused its discretion in denying his "motion for a full evidentiary hearing in light of the issues petitioner raised in his *pro se* pleadings submitted to the circuit court after the June 30, 2016[,] hearing."[4] Simply put, petitioner cites to no authority that would require the circuit court to reopen the evidentiary hearings regarding his motion for a new trial. In the order on appeal, the circuit court found that petitioner was given ample opportunity to make a full and complete record of his allegations of juror misconduct and there was no need to reopen evidentiary proceedings. We agree. Petitioner had two hearings to cross-examine the witnesses called and petitioner's counsel asked pertinent questions regarding the relationship, if any, between them. Further, petitioner could have secured testimony from any other relevant witness, but failed to do so. And finally, as set forth above, the circuit court considered the affidavit

---

[4]In support of this assignment of error, petitioner also appears to assert that his counsel below was ineffective for failing to secure Ms. Reese's testimony in support of his motion for a new trial. We note, however, that

> [i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. Pt. 10, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992). Accordingly, we decline to address petitioner's argument regarding the alleged ineffective assistance of his counsel on appeal.

Further, to the extent that petitioner argues that the circuit court erred in denying his motion to remove counsel and have new counsel appointed, we find no error. First, the record shows that petitioner's trial counsel did, indeed, file a motion to reopen evidentiary proceedings in order to secure Ms. Reese's testimony, as directed by petitioner. Accordingly, it is clear that petitioner did not require new counsel in order to file such motion. Second, petitioner's assertion that his trial counsel had somehow become a fact witness in regard to Ms. Reese's investigation and, thus, needed to be removed, is unsupported by the record. Accordingly, we find no error in this regard.

of the proposed witness in question. Accordingly, we find no error in this regard.

      For the foregoing reasons, we affirm the circuit court's March 15, 2017, order.

Affirmed.

**ISSUED:**   September 13, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchinson

8